UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO.  3:19-CR-00307-SRU |
| RAYSHON FRAZIER | : | July 31, 2020 |

## MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS

## TABLE OF CONTENTS

**INTRODUCTION**........................................................................................................**2**

**STATEMENT OF FACTS** ........................................................................................**3**

**LEGAL FRAMEWORK** ...........................................................................................**5**

I. APPLICABLE LAW REGARDING REQUIREMENTS FOR A VALID SEARCH WARRANT ........................5

A. *Neutral and Detached Magistrate Judge*........................................................................5

B. *Probable Cause*………………………………………………………………………………………5

C. *No Deliberately False or Recklessly Misleading Affidavit*............................................6

D. *Particularity*…………………………………………………………………………………………….7

II. THE "GOOD FAITH" EXCEPTION ..................................................................................7

**ARGUMENT** ..............................................................................................................**8**

I. Rayshon Frazier has standing to challenge the search of his home...............................8

II. The Warrant Affidavit Is Deliberately Misleading ......................................................8

III. The Warrant Affidavit Does not Establish Probable Cause to Search—Particularly Absent the Misleading Information...............................................................................12

IV. The Deliberately Misleading Information Precludes Application of the Good Faith Exception 15

V. The Deliberately Misleading Material Information in the Affidavit and Additional Factual Questions Require a further Factual Hearing..................................................................15

**CONCLUSION**...........................................................................................................**16**

## INTRODUCTION

In November of 2019, law enforcement obtained a warrant to search an apartment rented to Mr. Frazier's girlfriend on the strength of allegations that he had travelled from that location in the course of conducting three controlled crack cocaine sales and that on one occasion he returned to the area of the apartment and was surveilled walking towards it. No other evidence linked the apartment to illicit activity.

As discussed below, the affidavit submitted to obtain the warrant at issue in this case deliberately misled the magistrate judge by deliberately excluding significant information that tended to diminish the apparent relationship between Mr. Frazier and the address to be searched and that suggested other possible locations other than that apartment where contraband may have been kept. Most notably, the search warrant affidavit omitted information showing that after one controlled buy Mr. Frazier was observed approaching (and presumably entering) an apartment unit other than the unit that was searched. That apartment was in fact the apartment that Mr. Frazier himself rented from the Waterbury Housing Authority. By excluding any mention of this apartment and by misleadingly implying that Mr. Frazier likely returned to the apartment for which the warrant was sought, law enforcement improperly prevented the magistrate judge from making a properly factually informed determination of probable cause.

This misinformation, moreover, was material to the probable cause determination. No evidence directly linked the apartment to Mr. Frazier's alleged retail drug sales at a mall over a mile away, and the evidence established only Mr. Frazier's presence at the apartment in temporal proximity to the drug sales. While under some circumstances travel to or from a location can support probable cause to search that location, this is not one of those circumstances. The misleading and incomplete nature of the affidavit suggests that law enforcement knew that too.

For the reasons that follow the Court should hold an evidentiary hearing, both to resolve any disputed issues of fact and to determine the scope of law enforcement's misrepresentations per *Franks v. Delaware*. The Court should thereafter suppress all fruits of the apartment search.

## STATEMENT OF FACTS

On November 27, 2019, Justin Lathrop, a Middletown police officer, submitted an affidavit to the Court (Spector, MJ) seeking arrest and search warrants, including a warrant to search 9 Harris Circle Apartment 1-D Waterbury. The warrant affidavit is attached as **Exhibit 1**. The warrant broadly describes alleged controlled purchases of narcotics from a man named Derrick Stokes in July and August of 2019 and from Rayshon Frazier in September through November of 2019.

In support of his request for a warrant to search the apartment at 9 Harris Circle, Officer Lathrop asserted variously that the apartment was the location where Mr. Frazier's "girlfriend was believed to live," *id*. at 16, as Mr. Frazier's "suspected stash location." *Id*. at 18, 26. He further asserted that Mr. Frazier's girlfriend, Yahaira Ramirez, was "one of the occupants of [9 Harris Circle Apartment 1-D] along with [Mr. Frazier] and a newborn child he has with Ramirez." *Id.* at 19.

With respect to Mr. Frazier, the affidavit identifies three controlled purchases of crack cocaine at a mall in Waterbury, Connecticut. The first of these purchases occurred on September 17, 2019. The affidavit describes:

> At approximately 1 :41 P.M., a surveillance unit observed FRAZIER's known vehicle, a blue Acura TSX CT registration AC63470 (Target Car) with tinted windows in the parking lot of a housing complex near the intersection of Berkley A venue and Long Hill Road. During the course of this investigation it was learned FRAZIER's girlfriend was believed to live in one of the apartments in the housing complex. At approximately 146 P.M. a surveillance unit observed FRAZIER walk to the Target Car carrying a diaper bag. FRAZIER placed the baby bag in the front passenger side door of the Target Car. FRAZIER was wearing a jean jacket and jeans with matching designs and his hair was tied in long braids. FRAZIER went back into the apartment briefly and came out with something in his hand but the surveillance unit could not identify what he had in his hand. The surveillance unit was able observe that the apartment door through which FRAZIER entered and exited was marked 1-D. The address FRAZIER left from was verified as 9 Harris Circle apartment 1-D Waterbury CT Target Premises 1.

*Id*. at 16. The affidavit details Mr. Frazier's alleged sale of narcotics at the mall shortly thereafter but does not describe Mr. Frazier's movement after completion of the claimed controlled purchase.

3

The second alleged controlled purchase that the affidavit describes occurred on October 10, 2019. The affidavit claims that

> A surveillance unit established surveillance at FRAZIERs suspected stash location of 9 Harris Circle Unit 1-D in Waterbury Target Premises 1. At this time the surveillance unit saw FRAZIERs vehicle a blue Acura TSX bearing CT registration AC63470 the Target Car parked near the intersection of Harris Circle and Berkeley Avenue. The surveillance unit captured FRAZIER leaving Target Premises 1 on video.

*Id.* at 18. The affidavit again does not describe Mr. Frazier's actions after completion of the alleged drug buy.

Finally, the affidavit describes an alleged controlled purchase on November 15, 2019:

> a surveillance unit established surveillance at FRAZIERs suspected stash location of 9 Harris Circle Unit 1-D in Waterbury Target Premises 1. At this time the surveillance unit saw FRAZIERs vehicle a blue Acura TSX bearing CT registration AC63470 Target Car parked near the intersection of Harris Circle and Berkeley Avenue.
> . . .
> At approximately 331 P.M. surveillance units observed FRAZIER exit Target Premises 1 and walk toward the Target Car. At approximately 333 P.M. surveillance units saw FRAZIERs vehicle
> Target Car and travel in the direction of the mall.
> . . .
> At approximately 344 P.M. the Airwing followed FRAZIER in the Target Car as he traveled back to the area of Target Premises 1 parked the Target Car on Berkley Avenue and walked toward Target Premises 1. Surveillance did not observe what door FRAZIER entered at the residence. Surveillance of FRAZIER was terminated at 355 P.M.

*Id.* at 26 – 27.

In addition to these controlled purchases, the affidavit also describes alleged conversations between Mr. Frazier and Derrick Stokes, who was at the time in Connecticut state custody. The affidavit generally alleges that Stokes gave Mr. Frazier instructions concerning how to continue his drug operation while Stokes was in prison. Among these conversations, the affidavit alleges that in one exchange on September 8, 2019, the person believed to be Mr. Frazier asked Stokes "Where you said that was in the in the in the closet At mommys shit, "to which Stokes responded "Its on the shelf with the black with the black tin can or whatever." Similarly in the course of a conversation on October 2, 2019, Mr Frazier allegedly asked Stokes, "You said she has a shoebox

4

overnher house or something right?" to which Stokes replied "It ain't no shoebox, it's a fuckin box so it's a lockbox." *Id*. at 20. Officer Lathrop further claims that "I know, based on my training and experience, that it is common practice for drug traffickers to store their drug proceeds, drug inventory, and related drug paraphernalia in their residences or residences of their trusted associates, including within safes or lockboxes. I thus believe that the person STOKES is referencing has a lockbox to hold items related to his drug trafficking." *Id.*

On the strength of the sworn statements in the affidavit, Magistrate Judge Spector authorized a search of 9 Harris Circle Apartment 1-D Waterbury. Defendant now moves to suppress all evidence recovered in the search of that location.

## LEGAL FRAMEWORK

### I.   Applicable Law Regarding Requirements for a Valid Search Warrant

#### A.  *Neutral and Detached Magistrate Judge*

A warrant must be authorized by "a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14 (1948).

#### B.  *Probable Cause*

The issuing magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place[.]" *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "This required nexus between the items sought and the 'particular place' to be searched protects against the issuance of general warrants, instruments reviled by the Founders who recalled their use by Crown officials

'to search where they pleased.'" *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (quoting *Stanford v. State of Texas*, 379 U.S. 476, 481 (1965)).

A magistrate judge's probable cause determination is ordinarily entitled to "considerable deference," *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007)), such that "the task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the magistrate a 'substantial basis' for making [his] determination," *id*. However, "where officers procuring a warrant have deliberately misled the magistrate about relevant information, no magistrate will have made a prior probable cause determination on the basis of the "corrected affidavits." In such circumstances, we do not review a magistrate's prior determination of probable cause, but rather try to predict whether a magistrate would have found probable cause if he had been presented with truthful information." *Velardi v. Walsh*, 40 F.3d 569, 574 n.1 (2d Cir. 1994).

### C.  No Deliberately False or Recklessly Misleading Affidavit

The information contained in the affidavit supporting the warrant must be "believed or appropriately accepted by the affiant as true." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). Where "an affidavit contain[s] erroneous information," a defendant must make a preliminary showing that "'(1) the claimed inaccuracies or omission are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding.'" *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (quoting *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998)). "The ultimate inquiry is whether, after putting aside erroneous information and material omissions, 'there remains a residue of independent and lawful information sufficient to support probable cause.'" *Id*. (quoting *United States v. Ferguson*, 758 F.2d 843, 848 (2d Cir. 1985)).

6

### D.  Particularity

A search warrant must state with particularity the location or object to be searched and the items to be seized. *Kentucky v. King*, 563 U.S. 452, 459 (2011). The Second Circuit has recently explained that a valid warrant must satisfy three requirements with respect to particularity. The warrant must: "[(1)] 'identify the specific offense for which the police have established probable cause[,]' *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013)[; (2)] 'describe the place to be searched[,]' *id.* at 445-46[; and (3)] 'specify the items to be seized by their relation to designated crimes[,]' *id.* at 446 (internal quotation marks omitted)." *United States v. Ulbricht*, No. 15-1815, 2017 WL 2346566, at *14 (2d Cir. May 31, 2017). "[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446 (citation and quotation marks omitted).

## II.     The "Good Faith" Exception

An invalid warrant does not require suppression if officers relied on it in good faith. "The burden," however, "is on the government to demonstrate the objective reasonableness of the officers' good faith reliance." *United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992). There are at least four core circumstances, identified by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 923 (1984), in which reliance on an invalidated warrant is unreasonable and does not support a finding of good faith: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992).

## ARGUMENT

**I.      Rayshon Frazier has standing to challenge the search of his home.**

At the time of the search at issue Mr. Frazier was present at 9 Harris Circle Apartment 1-D Waterbury, the apartment the search of which is the subject of this motion. He was arrested at that apartment the day of the search and was a regular invited overnight occupant of the apartment, which was rented to his girlfriend Yahaira Ramirez. Consistent with his status a copy of Mr. Frazier's electric bill for the apartment he rented in the same complex, 23 Harris Circle Apartment 1-D, was discovered in the search of 9 Harris Circle Apartment 1-D. **Exhibit 2**. Mr. Frazier therefore has standing to contest the legality of the search.

**II.     The Warrant Affidavit Is Deliberately Misleading**

The residential search at issue in this case did not concern a location at which Mr. Frazier was ever observed conducting any drug transactions. There is no allegation that any government witness observed Mr. Frazier store narcotics or other contraband at the residence, nor any claim that Mr. Frazier stated that he did so. This is also not a case in which investigators conducted trash pulls or other investigation linking criminal activity directly to a residence.

Instead, the warrant affidavit in this case attempts to connect the apartment to retail drug sales that Mr. Frazier allegedly engaged in at the Brass City Mall, over a mile and a half away. **Exhibit 3**. In order to make this connection, the affidavit describes three controlled purchases of crack cocaine at the mall and reports the following information concerning Mr. Frazier's observed activities before and after these purchases:

1) On September 17, 2019, officers observed Mr. Frazier at 9 Harris Circle Apartment 1-D shortly before conducting a drug sale at the Brass City Mall. They did not claim to observe him after the sale.

2) On October 10, 2019, officers observed Mr. Frazier leave the apartment ahead of a drug sale at the mall. They did not claim to observe him after the sale.

3) On November 15, 2019, officers observed Mr. Frazier leave the apartment, conduct the drug sale at the mall, and return to the area of 9 Harris Circle and walk toward Apartment 1-D. Surveillance did not observe what door FRAZIER entered at the residence.

With respect to both the September 17 and (more egregiously) the November 15 events, the affidavit is deliberately misleading in a manner that materially exaggerates the relationship between 9 Harris Circle Apartment 1-D and Mr. Frazier's alleged drug sales.

With respect to September 17, the affidavit states, without providing specific details, that about three hours before the controlled buy "the UC and FRAZIER discussed their locations, and FRAZIER said he needed an hour or two before they meet. FRAZIER told the UC he had the product for him and wanted to meet later" at the mall. Ex. 1 at 16. The next reference to Mr. Frazier in the affidavit is as follows:

> At approximately 1 :41 P.M., a surveillance unit observed FRAZIER's known vehicle, a blue Acura TSX CT registration AC63470 (Target Car) with tinted windows in the parking lot of a housing complex near the intersection of Berkley A venue and Long Hill Road. During the course of this investigation it was learned FRAZIER's girlfriend was believed to live in one of the apartments in the housing complex. At approximately 1 : 46 P .M., a surveillance unit observed FRAZIER walk to the Target Car carrying a diaper bag. FRAZIER placed the baby bag in the front passenger side door of the Target Car. FRAZIER was wearing a jean jacket and jeans with matching designs, and his hair was tied in long braids. FRAZIER went back into the apartment briefly and came out with something in his hand, but the surveillance unit could not identify what he had in his hand. The surveillance unit was able observe that the apartment door through which FRAZIER entered and exited was marked 1-D. The address FRAZIER left from was verified as 9 Harris Circle, apartment 1-D, Waterbury CT (Target Premises 1).

*Id*. at 17. This narrative creates the impression that in the time period leading up to 1:46 PM, Mr. Frazier was at 9 Harris Circle, apartment 1-D, and it leaves open a reasonable inference that Mr. Frazier was at that address when he allegedly informed the undercover officer that he "had the product for him."

Law enforcement, however, knew full well that Rayshon Frazier was not at 9 Harris Circle apartment 1-D when he spoke with the undercover officer or for most of the intervening

time between that call and the controlled purchase. During the call approximately three hours before the buy, Rayshon did not describe his location as the affidavit states, but rather stated that "I gotta go pick my son up from the hospital. . . I just had a baby the other day . . . I gotta go get him . . . as soon as I'm done with that I got you. I already put it to the side for you and all that."[1]

A recording of a later call at 1:05 pm (less than an hour before the buy) appears to reflect Mr. Frazier stating that "I'm leaving the hosp—I'm leaving UConn at Farmington so I'm coming to you right now." This call is not disclosed in the affidavit at all. The UConn Hospital at Farmington is 25 miles from 9 Harris Circle and a 30 – 40-minute drive. **Exhibit 4**. It is therefore highly likely that the affidavit's assertion that at 1:41 pm officers observed Mr. Frazier's vehicle "in the parking lot of a housing complex" actually reflects that at 1:41 PM officers observed Mr. Frazier ARRIVE at the parking lot. Mr. Frazier was only at that apartment for a few minutes, and his presence at the apartment was easily explained by his need to drop his son and his son's mother off at her apartment. Leaving out this context misleadingly misrepresented the nature and duration of Mr. Frazier's connection with 9 Harris Circle apartment 1-D on September 17, 2019. An evidentiary hearing will be required to determine the exact nature of law enforcement's knowledge of Mr. Frazier's movements at this time.

Even more concerning is the affidavit's characterization of Mr. Frazier's movements on November 15, 2019. This incident represents the sole occasion on which law enforcement claim to have observed Mr. Frazier leave 9 Harris Circle, conduct a drug sale, and return. On the return trip, the affidavit claims that "At approximately 344 P.M. the Airwing followed

---

[1] To protect the identity of the undercover officer the present motion does not include the original recordings of these conversations, which are available to be filed under seal as needed.

FRAZIER in the Target Car as he traveled back to the area of Target Premises 1 parked the Target Car on Berkley Avenue and walked toward Target Premises 1. Surveillance did not observe what door FRAZIER entered at the residence." **Exhibit 1**. The strong implication of this language is that Mr. Frazier walked back to 9 Harris Circle unit 1-D, but law enforcement didn't get a clear view of him entering the apartment.

Video footage of the surveillance of Mr. Frazier shows that law enforcement knew with certainty that Mr. Frazier did not return to 9 Harris Circle unit 1-D. As the video attached as **Exhibit 5** shows, upon returning to the vicinity of Harris Circle, Mr. Frazier did not go to the location of the complex where 9 Harris Circle was located, let alone approach Apartment 1-D. Instead, the video demonstrates that he walked to an entirely different part of the complex and walk towards an entirely different apartment. A stairway blocks the surveillance view of Mr. Frazier's final approach to a specific apartment, but the unit Mr. Frazier approached was consistent not with 9 Harris Circle 1-D but with 23 Harris Circle 1-D. *See* **Exhibit 6**. As the utility bill and the lease documents attached as **Exhibit 2** show, Mr. Frazier was the registered tenant of this other apartment. More, because Mr. Frazier was the person listed on the utility bill for this apartment—and was the official tenant of the Waterbury Housing Authority—investigators were well able to discern Mr. Frazier's relationship to the apartment they saw him approach.

Rather than forthrightly acknowledge the existence of an alternative apartment associated with Mr. Frazier, Officer Lathrop chose to craft an affidavit that deliberately failed to inform the magistrate 1) that law enforcement <u>knew</u> that Mr. Frazier did not return to 9 Harris Circle Apartment 1-D and 2) that Mr. Frazier went to another apartment entirely. A factual hearing is needed to determine whether at the time of swearing the affidavit law enforcement

11

had taken the minimal investigative steps needed to determine that Mr. Frazier was in fact the official tenant of this alternate apartment.

### III.   The Warrant Affidavit Does not Establish Probable Cause to Search—Particularly Absent the Misleading Information

As discussed above, a valid warrant must demonstrate as part of the probable cause analysis that there is a "nexus between the items sought and the 'particular place' to be searched[.]" *Clark*, 638 F.3d at 94. It is not enough for an affidavit merely to establish that a person was both engaged in drug activity and connected to a particular address. Applying this principle, Judge Nevas in *United States v. Rios*, 881 F. Supp. 772 (D. Conn. 1995), held that a warrant application did not provide probable cause where "although [the agent's] affidavit provides factual support for the conclusions that Rios was involved in the criminal activities of the Latin Kings and that he lived at 490 Broad Street, it contains no allegations of fact linking Rios's alleged illegal activity to his residence." *Id*. at 775 (footnote omitted). Under these circumstances, Judge Nevas determined that the agent's expert opinion "that large scale drug traffickers tend to keep records, receipts, documents, contraband, paraphernalia associated with drug trafficking, large amounts of cash, weapons, and ammunition in a secure place to which they have ready access, such as their homes or businesses," *id*., could not supply the otherwise absent evidence of a nexus between the crime and the place to be searched.

In so holding, Judge Nevas relied upon an earlier decision in the Eastern District of New York explaining that:

> [T]he affiant proffered his expert opinion that narcotics traffickers often keep records in their residences. While the issuing magistrate is certainly entitled to consider and credit this specialized knowledge, it does not alone provide probable cause to search. Indeed, where as here, there is nothing to connect the illegal activities with the arrested person's apartment, to issue a warrant based solely on the agent's expert opinion would be to license virtually automatic searches of residences of persons arrested for narcotics offenses. This would effectively eviscerate the fourth amendment's requirement that there be probable cause to believe that contraband or evidence of a crime will be found *in a particular place.*

*United States v. Gomez*, 652 F. Supp. 461, 463 (E.D.N.Y. 1987) (citations and internal quotation marks omitted; emphasis in original). *Cf. United States v. Benevento*, 836 F.2d 60, 71 (2d Cir. 1987), *abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989) (citing *Gomez* for proposition that agent's "testimony, standing alone, might not be sufficient to establish a link between the Beneventos' current homes and their prior criminal activity" but holding sufficient other evidence supported probable cause).

Under some circumstances, travel to and from a location to controlled purchases can support the existence of the required nexus. A court in this district has recently stated that "[p]robable cause to search a location for contraband following a sale of narcotics may be established by observations of the seller going to the location immediately before or after the sale. See Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.7(d) nn.193-94 (5th ed. 2012 & Supp. 2018) (collecting cases)." *United States v. Stewart*, No. 3:17-CR-00072 (RNC), 2019 WL 2052136, at *4 (D. Conn. May 9, 2019). Notably, however, *Stewart* involved not only the observation of three controlled purchases, but also "surveillance of 90 Spring Street prior to the third sale revealed activity consistent with a sale of drugs out of the second-floor apartment." *Id*.

Illustrating contrasting circumstances in which this sort of observation of travel to/from drug sales cannot supply probable cause, a court in the Northern District of Texas has recently elaborated:

> The Court does not attempt to pinpoint the level or nature of drug trafficking necessary to provide the basis for a normal inference that drug-trafficking evidence would be in the suspect's residence, but the Court finds that Bell's drug trafficking does not rise to such a level. . . . Although in the instant case the affidavit detailed three drug transactions conducted by Bell, the transactions (1) were only ever with one person (Detective Kelly), (2) were for amounts never exceeding seven grams, and (3) never occurred in the immediate vicinity of the Laureland Residence. In fact, Detective Kelly admitted during the hearing that the statements in the affidavit that he believed certain drug-trafficking evidence would be in the Laureland Residence were based solely on his general experience and not because of something specific to Bell. Hearing Tr. 43–44 (Doc. No. 160). The affidavit certainly alleges that Bell sold methamphetamine; however, it does not allege the level or nature of drug trafficking that would provide the basis for a normal inference that drug-trafficking evidence would be at the Laureland Residence. A contrary conclusion would risk destroying the requirement that an affidavit establish a nexus between the residence to be searched and the desired evidence, and instead allow officers free reign to search a suspect's residence so long as the officers could establish *any* involvement in drug trafficking. The Court refuses to adopt

a rule that would undermine the requirement that a "nexus ... be established through direct observation or through '*normal inferences* as to where the articles sought would be located.' " *Payne*, 341 F.3d at 400 (emphasis added) (quoting *Freeman*, 685 F.2d at 949).

*United States v. Bell*, 382 F. Supp. 3d 574, 583–84 (N.D. Tex. 2019). The affidavit in *Bell*, it is worth noting, included an officer's observation of the defendant leaving the residence that was the object of the search and driving straight to the location of a controlled buy. *Id*. at 578.

The present case is not one in which law enforcement possessed information directly linking 9 Harris Circle 1-D to criminal activity or contraband. No drug transactions were ever allegedly conducted there, nor did investigative methods such as trash pulls supply evidence that contraband would be found at the apartment. The sole link between the apartment and the alleged drug activity over a mile away was that Mr. Frazier was at the residence immediately prior to driving to the mall. Unlike in *Stewart* there is no accompanying evidence about the house itself being used for drug purposes.

For reasons similar to *Bell*, the affidavit, particularly after excising the misleading portions, does not establish a sufficiently concrete tie between 9 Harris Circle Apartment 1-D and Mr. Frazier's alleged sales of retail quantities of crack cocaine. This is particularly true because information known (or easily knowable) to law enforcement but in some cases excluded from the affidavit show that there were several other locations other than 9 Harris Circle Apt. 1-D that could have been the location where Mr. Frazier held drugs. These include most obviously 23 Harris Circle, the apartment the affidavit chose to omit. That location was equally convenient to the Brass City Mall as 9 Harris Circle and was not occupied by Mr. Frazier's girlfriend or young child. This alternate apartment significantly diminishes the intuitive link between 9 Harris Circle Apt. 1-D and Mr. Frazier's alleged drug dealing. As the First Circuit has put it, "[i]n drug cases, there is often probable cause to believe that evidence of the crime will be found where the suspected drug dealer lives, at least where, as here, [n]o other residence or drug-dealing headquarters of [the defendant's has been] identified." *United States v. Dixon*, 787 F.3d 55, 60 (1st Cir. 2015). Here an alternative residence was readily identifiable—and that fact was withheld from the magistrate.

What's more, from phone conversations involving Derrick Stokes authorities had reason to suspect the existence of at least one other location associated with Mr. Frazier's alleged drug dealing at Mr. Stokes' behest. Mr. Frazier of course also had a car that he consistently drove to the location of the alleged controlled buys. There were thus multiple alternative locations where drugs may have been stored, further diminishing the inferential warrant for believing contraband to be at 9 Harris Circle Apartment 1-D.

### IV.    The Deliberately Misleading Information Precludes Application of the Good Faith Exception

The good faith exception does not apply where the magistrate judge has been knowingly misled. *Moore*, 968 F.2d at 222. As explained above, that is the case here.

### V.    The Deliberately Misleading Material Information in the Affidavit and Additional Factual Questions Require a further Factual Hearing

"Ordinarily, a search or seizure pursuant to a warrant is presumed valid. In certain circumstances, however, a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure. *See Franks v. Delaware,* 438 U.S. 154, 164–72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Canfield,* 212 F.3d 713, 717 (2d Cir.2000). In order to invoke the *Franks* doctrine, [a defendant] must show that there were intentional and material misrepresentations or omissions in [a] warrant affidavit." *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003) (footnote omitted).

Here, the affidavit excluded information that was known or easily knowable to law enforcement and mischaracterized the investigative record. A *Franks* hearing is needed to determine the extent of law enforcement malfeasance, including law enforcement's actual knowledge of Mr. Frazier's address at 23 Harris Circle.

Additionally, because "an evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the

court to conclude that contested issues of fact going to the validity of the search are in question,"
*United States v. Getto*, 729 F.3d 221, 227 n.6 (2d Cir. 2013), the Court should conduct such a
hearing prior to ruling on this motion.

## CONCLUSION

For the reasons above, all fruits of the search of 9 Harris Circle Apartment 1-D should be
suppressed following an evidentiary hearing.

Respectfully submitted,

THE DEFENDANT,
Rayshon Frazier

OFFICE OF THE FEDERAL DEFENDER

Dated: July 31. 2020

*/s/ James P. Maguire*
James P. Maguire
Assistant Federal Defender
265 Church Street, Suite 702
New Haven, CT 06510
Phone: (203) 498-4200
Bar No.: ct29355
Email: James_Maguire@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 31, 2020, a copy of the foregoing was filed electronically
and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to
all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept
electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through
the Court's CM/ECF System.

*/s/ James P. Maguire*
James P. Maguire